PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212.561.7700
Facsimile:  212.561.7777
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Harry Hochman (CA Bar No. 132515)
Conflicts Counsel for Debtors and Debtors in Possession DANA CORPORATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Dana Corporation, *et al.* , | : | (Jointly Administered) |
| | : | |
| Debtors | : | Bankruptcy Case No. 06-10354 (BRL) |
| | : | |
| TOYOTA TSUSHO AMERICA, INC.; | : | District Court Case Nos. |
| EMHART TEKNOLOGIES, INC.; HYDRO | : | 07-CV-04837 |
| ALUMINUM PRECISION TUBING | : | 07-CV-05460 |
| NORTH AMERICA, LLC; THE TIMKEN | : | 07-CV-05461 |
| COMPANY, TIMKEN U.S. CORP., | : | 07-CV-05659 |
| TOYOTETSU AMERICA, INC. and | : | 07-CV-05995 |
| TOYOTETSU MID AMERICA, LLC; and | : | |
| BERLIN METALS, LLC, | : | |
| | : | |
| Appellants, | : | |
| | : | |
| vs. | : | |
| | : | |
| DANA CORPORATION, *et al.,* | | |
| | | |
| Appellee. | | |

_____

**APPELLEE'S OPENING BRIEF**

# TABLE OF CONTENTS

**Page No.**

STATEMENT OF APPELLATE JURISDICTION ....................................................... 1

ISSUES PRESENTED............................................................................................... 1

STANDARD OF REVIEW ....................................................................................... 2

STATEMENT OF THE CASE................................................................................... 2

STATEMENT OF FACTS ........................................................................................ 7

    A.    Background ................................................................................................ 7

    B.    The Reclamation Procedures and the Reclamation Claims ...................... 8

    C.    The Prepetition Credit Facility................................................................. 9

    D.    The Postpetition Credit Facility ............................................................. 10

ARGUMENT ......................................................................................................... 13

    A.    Reclamation Before BAPCPA................................................................ 13

    B.    The Bankruptcy Court Ruled Correctly That BAPCPA Does Not Create A New Federal Right Of Reclamation ............................................................. 15

    C.    The Bankruptcy Court Ruled Correctly That The Prior Lien Defense Defeats The Reclamation Claims In This Case....................................................... 22

    D.    The Bankruptcy Court Ruled Correctly That The DIP Lenders Had The Rights Of Good Faith Purchasers, And Did Not Abuse Its Discretion In Denying Discovery ................................................................................................................ 27

    E.    The Bankruptcy Court Did Not Abuse Its Discretion In Declining To Apply Equitable Estoppel ................................................................................. 29

    F.    Berlin Metals Issues .............................................................................. 31

CONCLUSION...................................................................................................... 33

# TABLE OF AUTHORITIES

<u>Page No.</u>

## CASES

*Desiano v. Warner-Lambert & Co.*,
    467 F.3d 85 (2d Cir. 2006)..................................................................................... 18
*Dewsnup v. Timm*,
    502 U.S. 410, 116 L.Ed. 2d 903, 112 S.Ct. 773 (1992) ......................................... 18
*Edmonds v. Compagnie Generale Transatlantique*,
    443 U.S. 256, *reh'g denied*, 444 U.S. 889 (1979) .................................................. 18
*Edwards v. District of Columbia*,
    821 F.2d 651 (D.C. Cir. 1987)............................................................................... 17
*Emil v. Hanley*,
    318 U.S. 515, 87 L. Ed. 954, 63 S. Ct. 687 (1943) ............................................... 18
*F.D.I.C. v. Four Star Holding Co.*,
    178 F.3d 97 (2d Cir. 1999)..................................................................................... 32
*Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.)*,
    239 B.R. 261 (Bankr. S.D.N.Y. 1999)............................................... 14, 15, 21, 28
*Gonzaga Univ. v. Doe*,
    536 U.S. 273, 153 L.Ed. 2d 273, 122 S.Ct. 2268 (2002)....................................... 17
*In re Advanced Marketing Services Inc.*,
    360 B.R. 421 (Bankr. D.Del. 2007) ................................................................ passim
*In re Charter Oil Co.*,
    54 B.R. 91 (Bankr. M.D. Fla. 1985) ...................................................................... 19
*In re Dairy Mart Convenience Stores, Inc.*,
    302 B.R. 128 (Bankr. S.D.N.Y. 2003) ............................................................ passim
*In re Dana Corp.*,
    367 B.R. 409 (Bankr. S.D.N.Y. 2007)............................................................. passim
*In re Daylin, Inc.*,
    596 F.2d 853 (9th Cir. 1979) ................................................................................ 19
*In re Georgetown Steel Co., LLC*,
    318 B.R. 340 (Bankr. D.S.C. 2004) ........................................................ 23, 30, 31
*In re Incredible Auto Sales LLC*,
    2007 WL 927615 (Bankr. D. Mont. Mar. 26, 2007)......................................... 19, 22
*In re Ionosphere Clubs, Inc.*,
    922 F.2d 984 (2d Cir. 1990), *cert. denied*, 502 U.S.C. 808 (1991) ......................... 2
*In re Pester Refining Co.*,
    964 F.2d 842 (8th Cir. 1992) ................................................................................ 23
*In re Phar-Mor, Inc.*,
    301 B.R. 482 (Bankr. N.D. Ohio 2003) .......................................................... passim
*In re Primary Health Systems, Inc.*,
    258 B.R. 111 (Bankr. D. Del. 2001) ................................................................ 15, 21

*In re Quality Stores, Inc.,*
    289 B.R. 324 (Bankr. W.D. Mich. 2003).............................................................. 15
*In re Steinberg's, Inc.,*
    226 B.R. 8 (Bankr. S.D. Ohio 1998)................................................................... 28
*In re Trans World Airlines, Inc.,*
    322 F.3d 283 (3d Cir. 2003).............................................................................. 32
*In re Victory Markets Inc.,*
    212 B.R. 738 (Bankr. N.D.N.Y. 1997) .......................................................... 14, 15
*In re Wathen's Elevators, Inc.,*
    32 B.R. 912 (Bankr.W.D.Ky.1983) .................................................................... 28
*McCain Foods, Inc. v. Flagstaff Foodservice Co. New England, Inc.*
    *(In re Flagstaff Foodservice Corp.),*
    14 B.R. 462 (Bankr. S.D.N.Y. 1981) ................................................................. 19
*Midlantic Nat'l. Bank v. New Jersey Dept. of Envtl. Protection,*
    474 U.S. 494, 88 L. Ed. 2d 859, 106 S. Ct. 755 (1986)..................................... 18
*Pennsylvania Dept. of Public Welfare v. Davenport,*
    495 U.S. 552, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990).................................. 18
*Public Loan Co., Inc. v. FDIC,*
    803 F.2d 82 (3d Cir. 1986)................................................................................... 2
*Readco, Inc. v. Marine Midland Bank,*
    81 F.3d 295 (2d Cir. 1996)................................................................................. 29
*Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.,*
    311 B.R. 378 (S.D.N.Y. 2004).............................................................................. 2
*United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,*
    484 U.S. 365, 98 L. Ed. 2d 740, 108 S. Ct. 626 (1988)..................................... 18
*United States v. Ron Pair Enterprises, Inc.,*
    489 U.S. 235, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989).................................. 18
*Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp.*
    *(In re Pittsburgh-Canfield Corp.),*
    309 B.R. 277 (6th Cir. BAP 2004)............................................................... passim

**STATUTES**

11 U.S.C. § 101(37)............................................................................................... 21
11 U.S.C. § 105(a) ................................................................................................... 6
11 U.S.C. § 1107.................................................................................................... 13
11 U.S.C. § 364................................................................................................ passim
11 U.S.C. § 364(c) ............................................................................................ 24, 25
11 U.S.C. § 364(c)(2) ............................................................................................ 11
11 U.S.C. § 364(c)(3)............................................................................................. 11
11 U.S.C. § 364(d) ............................................................................................ 24, 25
11 U.S.C. § 503(b) ................................................................................................. 14
11 U.S.C. § 503(b)(9)....................................................................................... passim
11 U.S.C. § 544(a)............................................................................................ 13, 15
11 U.S.C. § 545............................................................................................... 13, 15
11 U.S.C. § 546(c) .......................................................................................... passim
11 U.S.C. § 546(c)(1)....................................................................................... 16, 20

11 U.S.C. § 546(c)(2) .................................................................................................. 16
11 U.S.C. § 547 .................................................................................................... 13, 15
11 U.S.C. § 549 .................................................................................................... 13, 15
11 U.S.C. § 7042(b) ................................................................................................... 9
28 U.S.C. § 158(a)(l) ................................................................................................. 1
U.C.C. § 1-201 (2003) .............................................................................................. 27
U.C.C. § 1-201(20) ................................................................................................... 14
U.C.C. § 1-201(32) ................................................................................................... 14
U.C.C. § 1-201(33) ................................................................................................... 14
U.C.C. § 2-103 (2003) .............................................................................................. 27
U.C.C. § 2-403 .......................................................................................................... 13
U.C.C. § 2-702 ................................................................................................... 2, 8, 13
U.C.C. § 2-702(2) ..................................................................................................... 19
U.C.C. § 2-702(3) ..................................................................................................... 14
U.C.C. § 2-702(C) ..................................................................................................... 27
U.C.C. § 2-705 .......................................................................................................... 13

## OTHER AUTHORITIES

3 *Norton Bankruptcy Law and Practice 2d,*
    § 56:5 (William L. Norton Jr., ed. 2007) ................................................................. 15
*Bankruptcy Abuse Protection and Consumer Protection Act of 2005 ("BAPCPA")* ............ passim
C. Richard McQueen and Jack F. Williams, *Tax Aspects of Bankruptcy Law and Practice,*
    §7:11 (3d ed. 2006) .................................................................................................. 15
Hon. Bruce A. Markell, *Changes to Avoiding Powers Brought About by the Bankruptcy Abuse*
    *Prevention and Consumer Protection Act of 2005,* ALI-ABA Course of Study,
    Jul 21-22, 2005 ....................................................................................................... 22
Neely, Sally S., *How BAPCPA Affects the Rights of Unpaid Prepetition Sellers of Goods,*
    32nd Lawrence P. King & Charles Seligson Workshop on Bankruptcy and Business
    Reorganization, ALI-ABA Course of Study materials, Chapter 11 Business Reorganizations,
    updated March 2007 ................................................................................................ 19
*Reclamation Under the New 546(c)(1): Illusory Remedy as Ever,*
    26 Am. Bankr. Inst. J. 46 (June 2007) ..................................................................... 15
Stacey L. Meisel, *With Bated Breath: Do The Revisions To §546(c)*
    *Create A Federal Right Of Reclamation For Sellers?,*
    26-APR Am. Bankr. Inst. J. 20 (2007) ..................................................................... 17

## RULES

Fed. R. Bankr. P. 7042 ................................................................................................ 6
Fed. R. Bankr. P. 9014 ................................................................................................ 6

Dana Corporation and the other above-captioned chapter 11 debtors and debtors in possession (collectively, the "Debtors" or "Appellees"), as appellees, hereby file their Opening Brief in opposition to the appeals of Toyota Tsusho America, Inc. ("Toyota Tsusho"),  Hydro Aluminum Precision tubing North America, LLC ("Hydro Aluminum"), Emhart Teknologies, Inc. ("Emhart"), The Timken Company, Timken U.S. Corp., Toyotetsu America, Inc. and Toyotetsu Mid America, LLC (collectively, "Timken"), and Berlin Metals, LLC ("Berlin Metals" and collectively with the other appellants "Appellants"), from the *Memorandum Decision Regarding Reclamation Claims Under Section 546(c) of the BAPCA,* entered April 19, 2007 (the "Memorandum Decision") (Bankruptcy Docket No. 5136), and the *Order Valuing Reclamation Claims Filed in the Debtors' Chapter 11 Cases at Zero*, entered on April 25, 2007 (the "Order") (Bankruptcy Docket No. 5175), issued by the Honorable Burton R. Lifland, United States Bankruptcy Judge for the Southern District of New York (the "Bankruptcy Court").

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(l).

## ISSUES PRESENTED

Appellants present variations on the following issues in their Opening Briefs:

A.    Did the Bankruptcy Court err in valuing Appellants' reclamation claims at zero?

B.    Did the Bankruptcy Court err in ruling as a matter of law that the 2005 amendments to Section 546(c) of the Bankruptcy Code did not create a new federal right of reclamation?

C.    Did the Bankruptcy Court err in ruling that the Debtors' post-petition pledge of assets to their post-petition lenders, and the satisfaction of the Debtors' pre-petition secured debt with a portion of the proceeds of the loan, constituted a "disposition" of the goods that were subject to reclamation claims, so as to defeat such claims?

D.    Did the Bankruptcy Court err in ruling that the Debtors' post-petition lenders qualified as good faith purchasers within the meaning of Section

2-702 of the Uniform Commercial Code, or abuse its discretion in failing to permit discovery on the issue?

E.     Did the Bankruptcy Court abuse its discretion by refusing to apply equitable estoppel to bar the Debtors from asserting the Prior Lien defense?

Berlin Metals articulates certain additional issues:

F.     Were goods sold by Berlin Metals to Reinz Wisconsin Gasket LLC ("Reinz Wisconsin") covered by the pre-petition banks' UCC security interest?[1]

G.     Did the Debtors have the power to convey a security interest in goods in violation of Berlin Metals' reclamation rights?

H.     Did the post-petition lenders receive a lien with priority over Berlin Metals' reclamation rights?

## STANDARD OF REVIEW

On appeal, the Bankruptcy Court's findings of fact must be accepted unless clearly erroneous, while its conclusions of law are reviewed *de novo*. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988-89 (2d Cir. 1990), *cert. denied*, 502 U.S.C. 808 (1991). Whether the Bankruptcy Court should have permitted discovery on the good faith of the post-petition lenders or equitably estopped the Debtors from asserting the Prior Lien Defense (as defined below) is reviewed only for abuse of discretion. *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 395 (S.D.N.Y. 2004). Such a finding usually requires the violation of a substantial right or fundamental unfairness. *Id.* (citing *Public Loan Co., Inc. v. FDIC*, 803 F.2d 82, 86 (3d Cir. 1986).

## STATEMENT OF THE CASE

These are appeals by several creditors that sought to have their unsecured claims accorded priority over other unsecured claims, based on their assertion of reclamation rights

---

[1] As discussed in greater detail below, this issue was not properly before the Bankruptcy Court and is not properly before this Court. *See p. 7 and* n.5, *infra*.

against the Debtors. The Bankruptcy Court held that reclamation rights had no value in this case, because any such rights were subject to the superior rights of a secured creditor with a blanket lien on substantially all of the Debtors' assets. Stated differently, because any of the goods that creditors might seek to reclaim were encumbered at all times, the remedy was unavailable, and thus reclamation rights had no value in this case. Accordingly, to the extent such creditors asserted claims based on their alleged right to reclaim goods (the "Reclamation Claims"), the Bankruptcy Court ruled that such claims had no value. *In re Dana Corp.*, 367 B.R. 409 (Bankr. S.D.N.Y. 2007). The ruling had no effect on the validity of Appellants' claims as general unsecured claims, or on their newly expanded statutory right under section 503(b)(9) of the Bankruptcy Code to be paid as an administrative expense for goods sold to the Debtors within twenty days of the bankruptcy filing.

The Bankruptcy Court's ruling comports with section 546(c) of the Bankruptcy Code, as it has been interpreted in this District, most notably by Judge Gonzalez in *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D.N.Y. 2003). Under the Bankruptcy Code, consistent with the applicable provisions of the Uniform Commercial Code (the "UCC"), reclamation rights are expressly subject to the superior rights of a party with a prior lien on such goods, and the existence of such a lien provides a complete defense to reclamation claims (the "Prior Lien Defense").

Here, the Prior Lien Defense applied because the Debtors' prepetition secured lenders held a preexisting floating lien on the subject inventory and equipment (the "Reclaimed Goods"). A floating lien cuts off a reclaiming party's right to Reclaimed Goods, regardless of whether the secured creditor is oversecured, because it is well-settled that the doctrine of marshaling does not apply in the reclamation context, *i.e.*, the reclaiming creditor cannot force the lender to satisfy its claims out of other collateral. That would be an impermissible reordering of priorities under applicable law. Reclaiming creditors have no greater rights under the Bankruptcy Code.

Appellants argued below that this case was different, because the lien on the Reclaimed Goods was not held by the prepetition secured lender, but by a new lender that had extended

debtor-in-possession financing (the "DIP Lender" and the "DIP Loan"). The Debtors had paid off the prepetition secured claim with proceeds of the DIP Loan, pursuant to an order of the Bankruptcy Court granting the DIP Lender a first priority lien on substantially all assets, including all Reclaimed Goods. Appellants argued: (1) reclamation rights are subject only to a prior lien; (2) the prepetition debt was satisfied from a source other than the Reclaimed Goods (*i.e.*, borrowings under the DIP Loan); (3) the Reclaimed Goods were thus liberated from the prior lien; and (4) the Reclamation Claims must now be valued in full.

Two noteworthy decisions have addressed the effect on reclamation rights when prepetition debt secured by a floating lien on inventory is paid from borrowings on a DIP loan that is secured by a new floating lien on the same inventory. One is Judge Gonzalez's decision in *Dairy Mart*, and the other is Judge Bodoh's decision in *In re Phar-Mor, Inc.*, 301 B.R. 482 (Bankr. N.D. Ohio 2003). Sensibly, *Dairy Mart* holds that reclamation rights do not sprout value when old senior debt is supplanted by new senior debt. Nothing about the replacement of one lien by another on Reclaimed Goods provides an economic rationale or equitable justification for revaluing reclamation rights. Rather, the use of the goods to collateralize the loan that retires the prior lien is effectively a disposition of the goods, because the release of the old lien and the creation of the new lien are a single, integrated transaction.

*Phar-Mor* adopted the same basic principles and, like *Dairy Mart*, contemplated that reclamation rights may be cut off by a DIP loan – but only if there is an assignment of the prepetition lien to the new lender. The court held that reclamation rights were not cut off when the DIP lender took a new lien and the prepetition lien was released. In other words, under *Phar-Mor*, it is the mechanics of the lien replacement – whether the DIP lender takes a new lien rather than an assignment of the prior lien – that determine whether reclamation rights have value or not. To the extent *Phar-Mor* is apposite, its formalistic and oversimplified approach is not law that should be adopted in this District. Judge Lifland properly rejected it, finding that the DIP Lien extended to all of the prepetition collateral, that "the lien chain continued unbroken" in the refinancing, and that the Reclaimed Goods were effectively disposed when the prepetition debt

was retired, because they were either liquidated or pledged in the refinancing. To argue otherwise disregards both the substance of the transaction and the priority that the DIP Lien was accorded as a priming lien authorized under section 364 of the Bankruptcy Code.

The Reclamation Claimants argue that the Bankruptcy Abuse Protection and Consumer Protection Act of 2005 ("BAPCPA") swept away the Prior Lien Defense in favor of a new and stronger federal right of reclamation. The Bankruptcy Court correctly rejected this argument. Congress amended section 546(c) to provide expressly that reclamation rights are subject to the prior rights of a secured creditor. The Prior Lien Defense and the *Dairy Mart* decision existed when it was passed, and there is no legislative history suggesting the amendment was intended to eliminate them and the long-standing application of UCC principles to reclamation claims in bankruptcy. No language of creation or preemption was used that would signal the creation of an exclusive federal right. As the Bankruptcy Court also noted, the statute is unworkable without importing existing law, and cannot be construed in the manner proposed by Appellants without absurd results. The opposite inference – that the amendment recognizes and incorporates the Prior Lien Defense – is far more reasonable. Finally, even under the express terms of the reworded statute, reclamation rights are still subject to prior rights, and thus cannot be enforced if the Reclaimed Goods are disposed to satisfy that lien. Thus the rationale of *Dairy Mart*—that the Reclaimed Goods were effectively disposed to satisfy the prior lien—remains, and was properly adopted by the Bankruptcy Court

What Congress did for suppliers of goods such as the Reclamation Claimants was far more significant: it enhanced their rights dramatically by enacting section 503(b)(9), which grants suppliers administrative claims for goods provided to the Debtor within twenty days of the petition date, *whether or not there are prior liens on the goods*, and whether or not they made a timely demand or satisfied other requirements for reclamation. This right is not only sturdier than reclamation rights, but its twenty day window is double the reclamation period under pre-BAPCPA law. The Reclamation Claimants barely acknowledge this substantial change in the law for their benefit. Congress' intent can only be divined from the plain language and effect of

these amendments. These suggest a legislative purpose to achieve a balance of substantive rights, not to reverse *Dairy Mart* or otherwise curtail the Prior Lien Defense.

Appellants argue that the DIP Lien cannot take priority over reclamation rights because the lender was aware of the existence of the reclamation claims, and thus could not be a good faith purchaser to whose interests the reclamation rights are subject. Whether or not a lender is aware of reclamation demands, however, is not the *sine qua non* of good faith under the Uniform Commercial Code or the Bankruptcy Code. Furthermore, the Court made a good faith finding in connection with the DIP Loan and approved a priming lien that is superior to reclamation rights. The priority of that lien cannot be challenged later by applying different criteria to facts that were known at the time. The Bankruptcy Court correctly rejected this argument, and did not abuse its discretion in refusing to permit discovery on the issue.

Finally, the Bankruptcy Court did not abuse its discretion in refusing to apply equitable estoppel. The Reclamation Claimants' estoppel argument is based on the fact that the Reclamation Procedures (as that term is defined below) were represented to be the sole and exclusive method for handling reclamation claims. The argument fails:  not only is the assertion of the Debtors' legal defenses entirely within the "method" contemplated by the motion and order, but the procedures *expressly* reserved the Debtors' right to raise "whether the demand is subordinate to the prior rights of a holder of a security interest in the applicable Goods or the proceeds thereof."[2]  On these facts, none of the requirements for estoppel were met.

The additional issues raised by appellant Berlin Metals are without merit and are outside the scope of the Bankruptcy Court's *Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7042* and 9014 *(I) Bifurcating Consideration of Issues Relating to Reclamation Claims; (II) Establishing a Briefing Schedule for Consideration of Certain Common Issues; and (III) Granting Certain Related Relief* (the "Reclamation Scheduling

---

[2] *See Amended Final Order, Pursuant to Sections 105(a), 362 and 546(c) of the Bankruptcy Code and Bankruptcy Rule 9019(b):  (A) Establishing Procedures for Resolving Reclamation Claims Asserted Against the Debtors and (B) Granting Related Relief (Bankruptcy Docket No. 724)* (the "Reclamation Procedures Order").

Order") (Bankruptcy Docket No. 3865). The Bankruptcy Court's ruling had no effect on reclamation claims based on goods not subject to the DIP Lien. The Bankruptcy Court had statutory authority give the DIP Lender a priming lien, and the argument that the DIP Lien, by its terms, is subordinate to reclamation rights is based on the selective omission of substantive language in the DIP financing orders. And, to the extent that Berlin Metals is arguing that the goods sold by Berlin Metals to Reinz Wisconsin were not covered by the pre-petition banks' UCC security interest, such argument is an individualized, fact-intensive issue, and pursuant to the Reclamation Scheduling Order which contemplated the threshold determination of the Prior Lien Defense, was not properly before the Bankruptcy Court or this Court.

Appellants press a common theme that devaluing the Reclamation Claims based on the priority of the DIP Lien is inequitable and represents a windfall to the Debtors at the Reclamation Claimants' expense. This appeal to equity is unfounded. It has always been the case that reclamation is unavailable when the goods to be reclaimed are encumbered. Where that is so, suppliers have no greater rights than other unsecured creditors. In bankruptcy, the balance of equities is not between reclaiming sellers and a debtor, but between reclaiming sellers and other unsecured creditors, whose claims are leapfrogged if the Reclamation Claims are sustained. Congress has already balanced those equities in the BAPCPA by granting Reclamation Claimants administrative priority for a substantial portion of their claims under the new section 503(b)(9). There is no indication that it intended to eliminate the Prior Lien Defense. The Bankruptcy Court's thoughtful and thorough decision should be affirmed.

## STATEMENT OF FACTS

### A.    **Background**

On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Debtor Dana Corporation ("Dana", and collectively with its Debtor and non-Debtor affiliates, the "Dana Companies") are leading suppliers of modules, systems and components for original equipment

manufacturer and service customers in the light, commercial and off-highway vehicle markets. The Dana Companies have operations in approximately 25 states, as well as in Mexico, Canada, 11 countries in Europe and 14 countries elsewhere in the world. As disclosed in Dana's Form 10-K filed on April 27, 2006, for the year ended December 31, 2005, the Dana Companies recorded revenue of approximately $8.7 billion and had assets of approximately $7.4 billion and liabilities totaling $6.8 billion.

**B.    The Reclamation Procedures and the Reclamation Claims**

As is common in the automotive industry, the Debtors regularly receive thousands of shipments of parts and other products every month from a vast supplier constituency as part of their just-in-time supply chain management systems. Following the commencement of these cases, over 450 of these suppliers sent letters to the Debtors demanding the return of the goods pursuant to section 546(c) of the Bankruptcy Code and/or section 2-702 of the UCC (collectively, the "Reclamation Claims"). The Reclamation Claims originally asserted claims against the Debtors in an aggregate amount of more than $297 million.

On March 29, 2006, the Bankruptcy Court entered the Reclamation Procedures Order (Bankruptcy Docket No. 724), approving certain procedures (the "Reclamation Procedures") as the sole and exclusive method for the resolution of Reclamation Claims against the Debtors.

Pursuant to the Reclamation Procedures Order, on June 30, 2006, the Debtors filed a notice listing the Reclamation Claims and the Debtors' reconciliation of each such claim (the "Reclamation Notice") (Bankruptcy Docket No. 1650). In the Reclamation Notice, the Debtors asserted that various fact-intensive defenses to the Reclamation Claims substantially reduced the aggregate amount of Reclamation Claims acknowledged by the Debtors as potentially valid.[3] The Reclamation Notice also asserted the Prior Lien Defense, arguing that the Reclamation

---

[3] The Debtors described their fact-intensive defenses in the Reclamation Notice with the caveat that the reconciliations represented a preliminary review and that the Debtors reserved their rights to supplement or amend their reconciliation of the Reclamation Claims upon further review of the facts. Reclamation Notice ¶¶ 15-16.

Claims were rendered valueless by the existence of prior liens on the Reclaimed Goods and therefore were not entitled to treatment as reclamation claims.[4] Accordingly, the Reclamation Notice identified the reconciled total of each Reclamation Claim as $0.00.[5]

Approximately 132 Reclamation Claimants filed objections to the Reclamation Notice that remain unresolved (collectively, the "Reclamation Objections"). On October 13, 2006, the Bankruptcy Court entered the Reclamation Scheduling Order (Bankruptcy Docket No. 3865).[6] On October 23, 2006, the Debtors filed their *Initial Brief in Support of Prior Lien Defense to Reclamation Claims* (the "Initial Brief") (Bankruptcy Docket No. 3939). Twenty-four responses were filed by Reclamation Claimants, to which the Debtors filed a reply on February 16, 2007 (Bankruptcy Docket No. 4766). Oral argument was heard on February 28, 2007. The Bankruptcy Court issued the Memorandum Decision on April 19, 2007 and its Order on April 26, 2007 valuing the Reclamation Claims at zero dollars.

## C.    The Prepetition Credit Facility

Dana was the borrower under that certain Five-Year Credit Agreement, dated March 4, 2005 (as amended, the "Prepetition Credit Facility").[7] The Prepetition Credit Facility was a $400 million revolving credit facility, of which up to a maximum of $100 million could be utilized for

---

[4] The liabilities underlying the Reclamation Claims could still be entitled to treatment, in whole or in part, as general unsecured nonpriority claims under section 502 of the Bankruptcy Code or valid administrative priority claims under section 503(b)(9) of the Bankruptcy Code.

[5] *Id.* at ¶ 15, Exhibit B.

[6] The Reclamation Scheduling Order provided that the Bankruptcy Court's "consideration of the Prior Lien Defense shall be bifurcated from consideration of the Fact-Intensives Defenses or any other issues relating to the Remaining Reclamation Claims, pursuant to Bankruptcy Rule 7042(b) (Bankruptcy Docket No. 3865 at ¶ 2. The Reclamation Scheduling Order went on to stay any and all litigation related to the Fact Intensive Defenses until the Bankruptcy Court ruled on the applicability of the Debtors' prior lien defense and conducted initial scheduling conferences (which have not yet take place). *Id.* Thus, in accordance with the Reclamation Scheduling Order, the Bankruptcy Court did not consider any fact intensive defenses in rendering its decision, and the additional factual issue raised on appeal by Berlin Metals was not before the Bankruptcy Court when it entered the Memorandum Decision and is not properly before this Court in this appeal.

[7] The Prepetition Credit Facility, along with all schedules and amendments thereto and waivers thereof, is Exhibit A to the Initial Brief (Bankruptcy Docket No. 3939).

letters of credit.[8]  In connection with the agreement of the lenders ("Prepetition Lenders") to waive certain defaults under the Prepetition Credit Facility, Dana and certain of Dana's domestic subsidiaries (collectively, the "Grantors") entered into a security agreement dated November 18, 2005, with Citicorp USA, Inc., as administrative agent under the Prepetition Credit Facility.[9] Pursuant thereto, the Grantors granted to the Prepetition Lenders a security interest in their equipment, inventory, accounts and certain other current assets (the "Prepetition Lien").

Pursuant to the Interim DIP Order and Final DIP Order (as such terms are defined below), the Prepetition Lien was determined to be a "valid, binding, perfected, enforceable, first-priority lien. . . ."[10]  This finding was not challenged by any of the Reclamation Claimants and is not at issue.

As of the Petition Date, borrowings under the Prepetition Credit Facility were not less than $381 million.  At that time, the aggregate value of all collateral, including the prepetition collateral, pledged to the Prepetition Lenders exceeded the amount of the Prepetition Indebtedness.[11]

## D.    The Postpetition Credit Facility

On the Petition Date, the Bankruptcy Court entered an interim financing order (Bankruptcy Docket No. 55) (the "Interim DIP Order"):[12]  (1) authorizing the Debtors to

---

[8]  *See* Prepetition Credit Facility § 2.01.

[9]  The Security Agreement, along with all schedules thereto, is Exhibit B to the Initial Brief (Bankruptcy Docket No. 3939).

[10]  Interim DIP Order ¶ 3(b); Final DIP Order ¶ 3(b).  As described below, this finding is based on a stipulation with the Debtors that is now binding on all of the Reclamation Claimants.

[11]  *See* Interim DIP Order ¶ 3(c); Final DIP Order ¶ 3(c) ("The aggregate value of the Pre-Petition Collateral exceeds the aggregate amount of the Pre-Petition Secured Indebtedness").  Because the Debtors have stipulated to this fact in the Interim DIP Order and the Final DIP Order, they do not intend to challenge those stipulations for the purposes of this litigation.

[12]  The Interim DIP Order is captioned as the Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 and Fed. Bankr. P. 2002, 4001 and 9014 and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b), 4001(c) and 4001(d).  A copy of the Interim DIP Order was attached to the Initial Brief as Exhibit C.

(a) obtain $1.45 billion in secured postpetition financing under that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated March 3, 2006 (as amended, the "DIP Facility"),[13] and (b) utilize the Prepetition Lenders' cash collateral; and (2) granting adequate protection to the Prepetition Lenders.

Under the DIP Facility and pursuant to the Interim DIP Order, the DIP Lenders were granted "a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre-petition and post-petition property of the Debtors ... whether now existing or hereafter acquired, that is subject to the existing liens presently securing the [Prepetition Credit Facility]" (the "DIP Lien").[14] Such security was a necessary condition of the DIP Lenders' agreement to extend postpetition financing to the Debtors under the DIP Facility.[15]

The Interim DIP Order also provided that all funds on deposit, including any proceeds generated by collections of accounts receivable or sales of inventory, were cash collateral of the Prepetition Lenders, and authorized the Debtors' use of such cash collateral on a post-petition

---

[13] The DIP Facility was entered into by and among: (a) Dana, as borrower; (b) the Debtors, as guarantors; (c) various banks, financial institutions and other institutional lenders party thereto (collectively, the "DIP Lenders"); (c) Citicorp North America, Inc. ("Citicorp"), as administrative agent; (d) Bank of America and JPMorgan Chase, as co-syndication agents; (e) Citicorp, as initial swing line lender; (f) Bank of America, Citicorp and JPMorgan Chase, as initial issuing banks; and (g) Citigroup Capital Markets, Inc., J.P. Morgan Securities Inc. and Banc of America Securities LLC, as joint lead arrangers and joint bookrunners. The DIP Facility, along with all schedules thereto, was also attached to the Initial Brief as Exhibit D.

[14] *See* Interim DIP Order ¶ 6(b); *see also* Final DIP Order ¶ 6(b) (containing the same provision).

[15] *See* Interim DIP Order ¶ 4(c); Final DIP Order ¶ 4(c) ("The Debtors are unable to obtain credit for borrowed money under sections 364(c)(2) and 364(c)(3) without the Debtors' granting to the Administrative Agent (for the ratable benefit of the [DIP Lenders] ... Liens on various of the assets of the Debtors...."); DIP Facility, at § 9.01 (granting liens on, among other things, the Prepetition Collateral "[t]o induce the [DIP] Lenders to make the Advances...."); Declaration of Henry S. Miller in Support of Motion of Debtors and Debtors in Possession for (I) An Interim Order Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001 and 9014 and (II) Interim and Final Orders Authorizing Them to (A) Obtain Postpetition Financing Pursuant to Sections 105, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of the Bankruptcy Code; (B) Utilize Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; and (C) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code (Bankruptcy Docket No. 30, Exh. C.), at ¶ 13 (declaring that all proposals for postpetition financing received by the Debtors prior to the Petition Date "required that the Debtors grant liens in substantially all of their assets and that some of the proceeds of the proposed debtor in possession financing facilities be used to ... refinance the Pre-Petition Secured Indebtedness.").

basis. [16]  As adequate protection for the diminution of the value of the Prepetition Lenders'

interest in the Prepetition Collateral occasioned by, among other things, the priming of the

Prepetition Lien by the DIP Lien and the Debtors' use of the Prepetition Lenders' cash collateral,

the Prepetition Lenders were granted a replacement security interest in, and lien upon, all of the

Debtors' collateral subject to the DIP Lien (including the Prepetition Collateral and the proceeds

thereof) (the "Replacement Lien").[17]  The Replacement Lien was effective and perfected upon

the entry of the Interim DIP Order (*i.e.*, on the Petition Date) without the need for the Debtors to

execute any mortgages, financing statements, security agreements or other agreements.  The

Replacement Lien was subordinated in priority only to (a) the DIP Lien, (b) liens upon the DIP

Lenders' collateral to which the DIP Lien was subordinate and (c) a collateral carve-out for the

payment of certain professionals' fees and other fees specified in the Interim DIP Order.[18]

On March 29, 2006, the Bankruptcy Court entered a final order (Bankruptcy Docket

No. 721) (the "Final DIP Order"), which, among other things, approved the DIP Facility on a

final basis and authorized the use of the Prepetition Lenders' Cash Collateral and the granting of

the DIP Lien and the Replacement Lien to the DIP Lenders and Prepetition Lenders,

respectively.[19]  In addition, the Final DIP Order authorized the Debtors to refinance the

Prepetition Indebtedness with the proceeds of the DIP Facility.[20]  On March 30, 2006

(the "Payoff Date"), pursuant to the terms and conditions of the DIP Facility and the Final DIP

Order, the Debtors repaid the Prepetition Indebtedness in full using funds borrowed under the

---

[16] *See* Interim DIP Order ¶¶ 19- 20 ("The Debtors are hereby authorized to use all Cash Collateral of the
Pre-Petition Creditors, and the Pre-Petition Creditors are directed promptly to turn over to the Debtors all Cash
Collateral received or held by them....").

[17] *See* Interim DIP Order ¶ 21(a).

[18] *See id.*

[19] The Final DIP Order is captioned as Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured
Financing Pursuant To 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and
507 and Fed. R. Bankr. P. 2002, 4001 and 9014 and (b) Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, and
(II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364.
The Final DIP Order is attached to the Initial Brief as Exhibit E.

[20] *See* Final DIP Order ¶ 5(a)(iii).

DIP Facility.[21]

# ARGUMENT

## A.    Reclamation Before BAPCPA

Reclamation is the right of a seller to recover possession of goods delivered to an insolvent buyer. Outside bankruptcy, a seller's right to reclaim is found in section 2-702 of the Uniform Commercial Code ("UCC"), as enacted in various states.[22] Prior to BAPCPA, it was settled that reclamation rights in bankruptcy were grounded solely in such state law, not the Bankruptcy Code. The relevant provision, Section 546 of the Bankruptcy Code, is cast as an exception to the rights of a trustee (or debtor-in-possession)[23] to avoid certain rights arising under nonbankruptcy law. Subject to certain procedural requirements, former section 546(c) provided that "the rights and powers of a trustee under … this title are subject to any statutory or common law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods …."[24]

---

[21] *See* Letter of David Mode of Citicorp USA, Inc., as administrative agent, dated March 30, 2006 (the "Payoff Letter") (copy attached to Initial Brief as Exhibit F).

[22] Section 2-702 of the UCC (as amended in 2003) provides:

> (1) If the seller discovers that the buyer is insolvent, the seller may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under Section 2-705.

> (2) If the seller discovers that the buyer has received goods on credit while insolvent, the seller may reclaim the goods upon demand made within a reasonable time after the buyer's receipt of the goods. Except as provided in this subsection, the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

> (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course of business or other good faith purchaser for value under Section 2-403. Successful reclamation of goods excludes all other remedies with respect to them.

UCC § 2-702.

[23] In cases under chapter 11 of the Bankruptcy Code, a debtor-in-possession generally has all the rights and duties of a trustee, and thus statutory references to a trustee also refer, when applicable, to a debtor-in-possession. 11 U.S.C. § 1107.

[24] Pre-BAPCPA, 11 U.S.C. § 546(c) provided:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to

(continued)

---

Thus, section 546(c) of the Bankruptcy Code historically had been viewed as a provision that "recognize[s] any right to reclamation that a seller may have under applicable nonbankruptcy law." *Dana*, 367 B.R. at 414; *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 132-33 (Bankr. S.D.N.Y. 2003) ("Section 546(c) does not create a new, independent right to reclamation but merely affords the seller an opportunity, with certain limitations, to avail itself of any reclamation right it may have under nonbankruptcy law."); *Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.)*, 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999); *In re Victory Markets Inc.*, 212 B.R. 738, 741 (Bankr. N.D.N.Y. 1997).

As a remedy, reclamation has certain fundamental limitations. Section 2-702(3) of the UCC provides that "the seller's right to reclaim … is subject to the rights of a buyer in ordinary course of business *or other good faith purchaser for value* …." (emphasis added). "Good faith purchaser," in turn, is defined to include a creditor holding a security interest or a lien. UCC § 1-201(20), (32) and (33). Furthermore, reclamation is an *in rem* remedy: a seller's rights are limited to the goods it sold or their proceeds, and it is not entitled to invoke the remedy of marshaling to compel a lienholder to resort to other collateral. *Dana*, 367 B.R. at 419; *In re Advanced Marketing Services Inc.*, 360 B.R. 421, 427-28 (Bankr. D.Del. 2007); *Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 287-88 (6th Cir. BAP 2004); *Dairy Mart*, 302 B.R. at 134; *Arlco*, 239 B.R. at 275.

---

(continued)

the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but-

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods-

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court-

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

Thus it is well settled that reclamation rights are subject to the rights of a secured creditor with a floating lien on the goods to be reclaimed. *See, e.g., Arlco,* 239 B.R. at 267-68 ("Most courts have treated a holder of a prior perfected, floating lien on inventory … as a good faith purchaser with rights superior to those of a reclaiming seller" and collecting cases demonstrating the majority rule) (quotation omitted); *Dana,* 367 B.R. at 419 (same); *Dairy Mart,* 302 B.R. at 133 (same); *Victory Markets,* 212 B.R. at 742 (same); *Advanced Marketing,* 360 B.R. at 425-27; *Pittsburgh-Canfield,* 309 B.R. at 277. Reclamation rights have value under state law only to the extent that the value of the reclaimed goods exceeds the amount of the secured lender's floating lien claim. *Dana,* 367 B.R. at 419; *Pittsburgh-Canfield,* 309 B.R. at 277; *Dairy Mart,* 302 B.R. at 134; *In re Primary Health Systems, Inc.,* 258 B.R. 111, 117 (Bankr. D. Del. 2001) ; *In re Quality Stores, Inc.,* 289 B.R. 324, 333-35 (Bankr. W.D. Mich. 2003)

For these reasons, among others, the reclamation rights have been characterized as "fragile" or even "illusory." 3 *Norton Bankruptcy Law and Practice 2d,* § 56:5 (William L. Norton Jr., ed. 2007) ("Reclamation claims are fragile rights."); *Reclamation Under the New 546(c)(1): Illusory Remedy as Ever,* 26 Am. Bankr. Inst. J. 46, 89 (June 2007) (post-BAPCPA, "[t]he reclamation right is as illusory as it has always been."); *C. Richard McQueen and Jack F. Williams, Tax Aspects of Bankruptcy Law and Practice,* §7:11 (3d ed. 2006) ("The reality is that, in most cases, asset-based financing provides a prior perfected lien on most goods such that the right of reclamation is rendered moot."). Appellants contend that Congress cast aside all of these limitations to reclamation when it enacted BAPCPA. As set forth below, the argument is without merit.

**B.    The Bankruptcy Court Ruled Correctly That BAPCPA Does Not Create A New Federal Right Of Reclamation**

As amended by BAPCPA, Section 546(c) of the Bankruptcy Code now provides:

> (c) (1) … ***subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof,*** the rights and powers of the trustee under sections 544(a), 545, 547 and 549 are subject to the right of a seller of goods that has sold goods to the

debtor, in the ordinary course of such seller's business, to reclaim
such goods if the debtor has received such goods while insolvent,
within 45 days before the date of the commencement of a case
under this title but such a seller may not reclaim any such goods
unless such seller demands in writing reclamation of such goods —

(A) not later than 45 days after the date of receipt of such
goods by the debtor; or

(B) not later than 20 days after the date of commencement
of the case, if the 45-day period expires after the commencement
of the case.

(2) If a seller of goods fails to provide notice in the manner
described in paragraph (1), the seller still may assert the rights
contained in section 503(b)(9).

11 U.S.C. § 546(c) (emphasis added).

The changes worked by BAPCPA upon section 546(c) are well summarized in the
Memorandum Decision. Congress increased the look-back period before bankruptcy during
which goods may be subject to reclamation from 10 days to 45 days, and increased the grace
period for filing a reclamation notice after a bankruptcy filing from 10 days to 20 days. By far
the most significant change for sellers of goods, however, is referenced in section 546(c)(2):
Congress created for sellers the right to an entirely new category of administrative expense, in an
amount equal to the value of any goods received in the ordinary course by the debtor within 20
days before the bankruptcy filing. 11 U.S.C. § 503(b)(9). This enormous benefit to sellers of
goods – barely acknowledged by Appellants – means that reclaiming sellers now receive an
administrative expense claim for a period twice as long as the former reclamation period, without
regard to the existence of a prior lien, and with virtually no substantive or procedural
requirements. Finally, Congress modified subsection (c)(1) to delete the reference to "the
statutory or common law" right of a seller of goods, and to state that the right of the seller is
"subject to the prior rights of a holder of a security interest in such goods or the proceeds
thereof." *Dana*, 367 B.R. at 414-16.

Appellants contend that the deletion of the reference to state law in the amended section
546(c)(1), and the insertion of the phrase "subject to the prior rights of a holder of a security

interest in such goods," signaled the creation of a new, exclusively federal right of reclamation, no longer subject to the restrictive definitions and interpretations of the UCC and other state law. This new federal right, if it exists, has only one substantive limitation that is fatal to appellants' case in any event: it is "subject to the prior rights of a holder of a security interest in such goods," a phrase that Appellants contend must mean that a reclaiming seller's rights in goods are subordinate to a preexisting lien, until that lien is satisfied or released.

Not a shred of legislative history supports the notion that the deletion of one phrase and the insertion of another were intended to sweep aside decades of law and create a new substantive federal reclamation right, and the Bankruptcy Court correctly rejected it.

In a thorough analysis, Judge Lifland cited the absence of legislative history, and noted the absence of any "language of creation": the new section 546(c) is still cast as a "Limitation on avoiding powers" and does not employ language such as "a seller may reclaim goods when, etc." *Dana*, 367 B.R. at 416.[25]  Logically, had a new federal reclamation right been created, it would not have remained in a section entitled "Limitations on avoiding powers," as there would be no need to limit the trustee's avoiding powers.[26]

The Bankruptcy Court also cited the fundamental principle that "[i]n order to create a federal right Congress must clearly manifest its intent to do so." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280, 153 L.Ed. 2d 273, 122 S.Ct. 2268 (2002), and that Congress must employ 'sufficiently specific and definite' statutory language in order to create rights ...." *Edwards v. District of Columbia*, 821 F.2d 651, 657 (D.C. Cir. 1987). "The normal rule of statutory

---

[25] *See also* Stacey L. Meisel, *With Bated Breath: Do The Revisions To §546(c) Create A Federal Right Of Reclamation For Sellers?*, 26-APR Am. Bankr. Inst. J. 20, *74 (2007) ("The suggestion that BAPCPA creates an absolute, federal right to reclamation should fail. Section 546(c) is a limitation on a trustee's avoiding powers where a seller has a right to reclamation under state law, it is not a section dedicated to the granting of an independent federal right of reclamation to sellers.").

[26] Appellants' response that they "are aware of no requirement that new federal rights must be set forth in a dedicated section" does not respond to the logic of the observation. Opening Brief of Appellants Timken Company, *et al.*, at 11. Their response to the argument that it would be unnecessary to impose a limitation on avoidance of a new federal right is even more unclear: "There is simply no basis for this conclusion given that New 546(c) provides rights to sellers whether they demand reclamation before or after the bankruptcy filing." *Id.*

construction is that if Congress intends for legislation to change the interpretation of a judicially

created concept, it makes that intent specific. *Edmonds v. Compagnie Generale Transatlantique*,

443 U.S. 256, 266-267, *reh'g denied*, 444 U.S. 889 (1979). The Court has followed this rule

with particular care in construing the scope of bankruptcy codifications." *Midlantic Nat'l. Bank*

*v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 501, 88 L. Ed. 2d 859, 106 S. Ct. 755

(1986) (emphasis added).

> When Congress amends the bankruptcy laws, it does not write "on
> a clean slate." *See Emil v. Hanley*, 318 U.S. 515, 521, 87 L. Ed.
> 954, 63 S. Ct. 687 (1943). Furthermore, this Court has been
> reluctant to accept arguments that would interpret the Code,
> however vague the particular language under consideration might
> be, to effect a major change in pre-Code practice that is not the
> subject of at least some discussion in the legislative history. *See*
> *United Savings Assn. of Texas v. Timbers of Inwood Forest*
> *Associates, Ltd.*, 484 U.S. 365, 380, 98 L. Ed. 2d 740, 108 S. Ct.
> 626 (1988). *See also Pennsylvania Dept. of Public Welfare v.*
> *Davenport*, 495 U.S. 552, 563, 109 L. Ed. 2d 588, 110 S. Ct. 2126
> (1990); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235,
> 244-245, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989).

*Dewsnup v. Timm*, 502 U.S. 410, 116 L.Ed. 2d 903, 419, 112 S.Ct. 773 (1992).[27] No legislative

history exists evidencing an intent to eliminate the Prior Lien Defense or reverse its

interpretation in Dairy Mart or any other decision.

  The Bankruptcy Court then pointed out numerous gaps and incongruities that would

result from the treatment of section 546(c) as a stand-alone federal reclamation right that

replaced state law. Without the UCC reclamation provisions, "a reclaiming seller would

conceivably have broad rights superior to those of buyers in the ordinary course of business, lien

creditors or good-faith purchasers other than a holder of a prior security interest." *Dana*, 367

B.R. at 417. *See also In re Incredible Auto Sales LLC*, 2007 WL 927615, *6 (Bankr. D. Mont.

---

[27]  *See also Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 95 (2d Cir. 2006) ("[W]ere we to conclude that
Appellants' claims were preempted, we would be holding that Congress, without any explicit expression of intent,
should nonetheless be taken to have modified (and, in effect, gutted) traditional state law duties between
pharmaceutical companies and their consumers. We see no reason, nor can we identify any precedent, to justify such
a result.").

Mar. 26, 2007) ("it may be a mistake to assume that the amended § 546(c) was intended to provide an entirely new and self-contained body of reclamation law, because it fails to recognize the rights of buyers in the ordinary course, other good faith purchasers and lien creditors, who were always protected under the U.C.C.  Perhaps the intent was to incorporate and expand on the U.C.C. reclamation rights, rather than to supplant them entirely, in which case some U.C.C. analysis may continue to be relevant in interpreting and applying the new § 546(c).").[28]  Judge Lifland made the following further observations:

> Moreover, without reference to state law, it is not clear if a seller could reclaim goods already paid for, as there is no requirement that the "sold goods" be on credit terms. *Cf.* U.C.C. § 2-702(2). Further, amended section 546(c) does not provide a limitation on when the seller discovers the buyer's insolvency when the historic purpose underlying the right to reclamation was to protect the seller from the buyer's fraud with respect to insolvency.  In addition, under former 546(c), goods must be identifiable and in the possession of the debtor on the day of demand.  Courts did not allow reclamation of goods that had been commingled with other goods or were not identifiable. *See, e.g., In re Charter Oil Co.*, 54 B.R. 91, 92-93 (Bankr. M.D. Fla. 1985) (goods must be identifiable and in possession of debtor on date of demand); *see also McCain Foods, Inc. v. Flagstaff Foodservice Co. New England, Inc. (In re Flagstaff Foodservice Corp.)*, 14 B.R. 462 (Bankr. S.D.N.Y. 1981); *In re Daylin, Inc.*, 596 F.2d 853, 856 (9th Cir. 1979). It is unlikely that Congress intended to remove these defenses as well.

*Id.* at 418.  *See generally* Neely, Sally S., *How BAPCPA Affects the Rights of Unpaid Prepetition Sellers of Goods*, 32nd Lawrence P. King & Charles Seligson Workshop on Bankruptcy and Business Reorganization, ALI-ABA Course of Study materials, Chapter 11 Business Reorganizations, updated March 2007.

Of particular import in this case is the uncertain meaning of the proviso *"subject to the prior rights of a holder of a security interest in such goods."*  Appellants presume that this means

---

[28]  Appellants do not offer an effective response to the failure of the supposed "stand-alone" statute to address the rights of buyers in the ordinary course or other good faith purchasers. One argues: "the addition of the words 'or the proceeds thereof' suggest that Congress likely intended that reclamation rights attach to proceeds of reclaimed goods in cases where such goods were sold to a good faith purchaser. . . . Accordingly, the Bankruptcy Court's concern for the rights of good faith purchasers and buyers in the ordinary course are unwarranted."  Opening Brief of Appellants Timken Company, *et al.*, at 11-12.  The inadequacy of this attempt at statutory repair is patent.

"junior to preexisting liens" or, as one Appellant presumes to elaborate, "junior to liens created by an agreement prior to the bankruptcy filing."[29] But that is not what it says. It says "prior rights." In the context of lien priority, the word "prior" was more likely intended to mean: "First, precedent, or superior in the order of cognition, reason or generality, origin, development, rank, etc.", as defined by Websters. In that manner, the statute would comport with section 364 of the Bankruptcy Code, pursuant to which the rights of the DIP Lenders were granted priority over all other interests in the Reclaimed Goods. In contrast, when "prior" is used in its temporal sense, its legal import is unclear. What are "prior rights"? That and many other questions cannot be answered without reference to existing law. What if the lienholder is oversecured? Is marshaling required? Appellants contend elsewhere that reclamation claims must be deemed to have value if the prior lien is oversecured. Is that purported right eliminated under their strict construction of post-BAPCPA section 546(c)? Are reclamation rights junior to the prior lien if it is assigned, as in *Phar-Mor*? What if the goods have been disposed? Does pledging the goods to release the prior lien constitute a disposition, as in *Dairy Mart*? If Congress intended to replace existing law with a new, more restrictive, federal "Prior Lien Defense Lite," it did so obliquely and incompletely. As it relates to the legal effect of prior liens, the statute requires judicial interpretation and substance, and there is simply no indication that Congress intended it to come from anywhere other than existing interpretations and substantive law on the subject. Restated, there is no Congressional intent to wipe the slate clean and none should be inferred.

That the amendment of section 546(c) was not a radical departure from pre-BAPCPA law was recognized in *Advanced Marketing*. There, the Delaware bankruptcy court rejected any construction of the "prior rights" language in amended section 546(c) that would limit its application to "junior to liens created by an agreement prior to the bankruptcy filing." *In re Advanced Marketing, supra*. After quoting the "prior rights" clause, Judge Sontchi ruled: "Accordingly, under the express language of § 546(c)(1) of the Bankruptcy Code, as amended,

---

[29] Opening Brief of Appellants Timken Company, *et al.*, at 12.

the Senior Lenders' pre-petition **and post-petition liens** on the Debtors' inventory are superior to S&S's reclamation claim." 360 B.R. at 426 (emphasis added). Such a result would be untenable under the Appellants' strict construction of section 546(c), as amended. Under their narrow interpretation, a postpetition lien cannot trump reclamation rights for purposes of the Prior Lien Defense because it temporally was not created "prior" to the assertion of such rights, no matter how closely it is tied to a prepetition lien.[30] While the postpetition lien in *Advanced Marketing* was cross-collateralized with the prepetition loan, it was nonetheless created after the assertion of such rights. Underscoring that BAPCPA was not revolutionary is the Delaware court's further notation that the "Court would reach the same result under section 546(c) as it existed prior to BAPCPA." *Id.* at n. 7 (citing *Pittsburgh-Canfield*, *In re Arlco, Inc.* and *In re Primary Health Systems, Inc.*, 258 B.R. 111,117-18 (Bankr. D. Del. 2001) ).

The conclusion that Congress did not intend to reverse *Dairy Mart* or other existing law on the effect of prior liens on reclamation rights is bolstered by the enactment of section 503(b)(9), which *does* represent an extraordinary expansion of suppliers' rights. Suppliers now have an independent right to an administrative claim in respect of all goods provided to a debtor in the ordinary course within twenty days of the petition date, without making any demand, and even where an existing lien renders their reclamation rights valueless. The new right covers goods supplied within twenty days of the petition date, double the pre-existing window for reclamation claims. The creation of this new and valuable right, and the explicit reference in section 546(c) to its preservation, suggests that it was intended as a counterweight to the express preservation of the Prior Lien Defense. As one judge has commented: "The existence of a new administrative expense that expressly covers periods greater than 10 days after receipt takes much of the power away from the reading that creates a new federal right under Section 546(c)."

---

[30] Certain of the Appellants suggest that BAPCPA confers lien status on reclamation claims. This cannot possibly be squared with their position that the amended section 546(c) is so restrictive. Moreover, there is absolutely no indication that new section 546(c) creates "lien" rights in reclamation claimants. "Lien" is a defined term in the Code. 11 U.S.C. § 101(37). If Congress had wanted reclamation claimants to be granted liens on account of their reclamation claims, it could have said so.

Hon. Bruce A. Markell, *Changes to Avoiding Powers Brought About by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, ALI-ABA Course of Study, Jul 21-22, 2005, SL068 ALI-ABA 247 (quoted in *In re Incredible Auto Sales, Inc.*, *supra*, 2007 WL 927615 at *6).

The Bankruptcy Court did not err in concluding that BAPCPA did not supplant state law with a new, broader federal right of reclamation.

**C.    The Bankruptcy Court Ruled Correctly That The Prior Lien Defense Defeats The Reclamation Claims In This Case**

Relying on the *Phar-Mor* decision, Appellants contend that even if the Prior Lien Defense survived BAPCPA, the Bankruptcy Court erred in its application to this case. The argument is straight-forward: (1) reclamation rights are subject only to a prior lien; (2) the prepetition debt was satisfied from a source other than the Reclaimed Goods (*i.e.*, from proceeds of the DIP Loan); and thus (3) the Reclaimed Goods have been liberated from the prior lien and reclamation claims must now be valued in full. In short, the prior lien no longer exists, so the Prior Lien Defense does not apply.

*Dairy Mart* and *Phar-Mor* each address the issue of whether reclamation rights are cut off by the lien securing a DIP loan that refinances prepetition secured debt and reach opposite outcomes. The Bankruptcy Court decided that Judge Gonzalez' decision in *Dairy Mart* was the better reasoned of the two, and that it applied in this case. The prepetition debt in this case was secured in part by a first priority lien on the Reclaimed Goods, and was paid from proceeds of the DIP Loan, which was also secured by the Reclaimed Goods. On such facts, Judge Gonzalez held that reclamation rights continued to be valueless after the release of the prior lien, because the release of the prior lien and the creation of the new lien were part of an integrated transaction, and the pledge of the reclaimed goods as collateral for the new loans that paid the old debt constituted the disposition of such goods for reclamation purposes. *Dairy Mart*, 302 B.R. at 135-36; *see also Advanced Marketing*, 360 B.R. at 425-27 (holding, post-BAPCPA, that

reclamation rights were subject to both pre- *and* post-petition liens).[31]

Appellants urged the Bankruptcy Court to follow the reasoning of *Phar-Mor*. In *Phar-Mor*, the prepetition secured debt was paid upon approval of the DIP financing and the prepetition lien was released. Approximately ten months later, the DIP loan of $135,000,000 was repaid from going-out-of-business sale proceeds, and approximately six months later, the debtors proposed a plan that provided for the payment of reclamation claims as administrative expenses and reserved $10,000,000 for that purpose. Shortly thereafter, the debtors moved to reclassify reclamation claims as general unsecured claims on the basis that the reclaimed goods had been sold in the going-out-of-business sale and applied to repayment of the DIP loan. Judge Bodoh sided with the reclamation claimants, on the basis that the prepetition lenders had released their lien on the reclaimed goods. *Id.* at 497. The release of the prior lien distinguished that case from a prior decision of the same court, in which reclamation rights were deemed subject to the rights of a DIP lender that had taken an assignment of the prepetition lien. *Id.* at 497 n.7 (referencing *Pittsburgh-Canfield*, 309 B.R. 277).

Where *Phar-Mor* diverges from *Dairy Mart* and *Dana* is in its mechanical approach to determining the legal consequence of retiring prepetition secured debt through a DIP loan. The *Phar-Mor* rationale is simple: the prepetition debt was paid and the prior lien was released, not preserved for the benefit of the DIP lender, and thus reclamation claims are no longer subject to the prior lien. *Phar-Mor*, 301 B.R. at 497 ("Since Pre-Petition Lenders' liens were released, Vendors' right to reclaim is not affected by the interests of Pre-Petition Lenders.").[32]

---

[31] Although cross-collateralization had been authorized in *Advanced Marketing*, the operative principle is the same: because there was never a time at which the Reclaimed Goods were not encumbered by a lien with priority over reclamation rights, there was never a time at which the reclamation rights had value.

[32] Setting aside its holding concerning the effect of the DIP lien, *Phar-Mor* simply falls into line with those cases that stand for the uncontroversial proposition that reclamation claims are not extinguished by a prepetition lien, and thus are no longer subject to such a lien after the lien is released. *In re Pester Refining Co.*, 964 F.2d 842, 848 (8th Cir. 1992) ("Because the secured creditors released their superior liens and satisfied their claims from unrelated assets and income sources, the bankruptcy court properly valued Ethyl's right to reclaim at the full invoice price"); *In re Georgetown Steel Co., LLC*, 318 B.R. 340, 348 (Bankr. D.S.C. 2004) (allowing a seller's administrative claim where the prior secured creditor had been paid in full and implicitly released its lien on the seller's goods).

*Dana* and *Dairy Mart* reject this superficial economic analysis. The cash to retire the prior lien could have been raised by selling the Reclaimed Goods, thereby extinguishing any reclamation rights. Instead, the prior lien was retired with borrowed cash raised by pledging the Reclaimed Goods as collateral for *another* first priority lien, conferred under subsections (c) and (d) of section 364 of the Bankruptcy Code. The sale of Reclaimed Goods to satisfy prepetition secured debt renders reclamation claims for such goods valueless. *Dana*, 367 B.R. at 409; *Dairy Mart*, 302 B.R. at 135-36. As both courts found, the use of the goods to collateralize the loan that pays off the prepetition secured debt is effectively the disposition of the goods, because the release of the old lien and the creation of the new lien are an integrated transaction.

> The only way the [Dairy Mart] Debtors could get a post-petition loan was if they afforded the debtor-in-possession lender a lien on all the pre-petition lender's collateral. *In effect, that was the disposition of the collateral* — the lien was given to the new lender in exchange for payment to Citizens or in effect 'sold' to the new lender. The transaction of releasing Citizens' lien and simultaneously granting the lien to the post-petition lender, Foothill, must be viewed as an integrated transaction . . . . There was a direct nexus between the release of the liens on the pre-petition collateral and the payment on the pre-petition secured loan . . . . *Thus, at the time that Citizens' secured claim was paid . . . , all of the goods or proceeds of those goods were disposed of to 'pay' Citizens' secured claim.* In this context, the reclamation goods or the proceeds from those goods have been used to satisfy the secured creditor's claim. As such the goods or their proceeds have effectively been 'paid' to the secured creditor, and the Reclamation Claims in those goods is valued at zero.

*Dairy Mart*, 302 B.R. at 135-36 (emphasis added). On the facts of this case, Judge Lifland's analysis and conclusion were similar:

> Here, the prepetition collateral, including the reclaimed goods, was subject to the Prepetition Lien. Pursuant to the Interim DIP Order, the Debtors were authorized to use the Prepetition Lenders' cash collateral, with the Replacement Lien providing a replacement security interest in all of the Debtors collateral subject to the DIP Lien, including the prepetition collateral and the proceeds thereof. The DIP Lien granted to the DIP Lenders pursuant to the Interim DIP Order and the Final DIP Order, provided a security interest in, and lien upon, all of the collateral

> constituting the prepetition collateral.  Thus the lien chain
> continued unbroken.  *Cf. Dairy Mart*, 302 B.R. at 184 (holding that
> the transaction of releasing the prepetition lien and simultaneously
> granting the lien to the post-petition lender, must be viewed as an
> integrated transaction).  The grant of the DIP Lien was a necessary
> condition of the DIP Lenders' agreement to enter into the DIP
> Facility.  Pursuant to the Final DIP Order, the Prepetition
> Indebtedness was refinanced and paid off using the proceeds of the
> DIP Facility on the payoff date.  Because the reclaimed goods or
> the proceeds thereof were either liquidated in satisfaction of the
> Prepetition Indebtedness or pledged to the DIP Lenders pursuant to
> the DIP Facility, the reclaimed goods effectively were disposed as
> part of the March 2006 repayment of the Prepetition Credit
> Facility.  Accordingly, the Reclamation Claims are valueless as the
> goods remained subject to the Prior Lien Defense.

*Dana*, 367 B.R. at 420-21.[33]

  To argue that reclamation rights gained value simply because the prior lien was released,

without taking into account the new loan, disregards the economic substance of the transaction.

It was a stated purpose of the DIP Loan to refinance the Prepetition Indebtedness, such relief was

expressly authorized, and the payoff was accomplished the day after the Final DIP Order was

entered.  The Reclaimed Goods were equally encumbered before and after the transaction.[34]  In

fact, the DIP Lien that replaced the prepetition lien was authorized as a priming lien under

sections 364(c) and (d) of the Bankruptcy Code, and so had priority not just over reclamation

rights, but over the prior lien that had priority over the reclamation rights!  Appellants would

construe section 546(c) to override the specific statutory authority under section 364 to approve

---

[33] Some Appellants seek to distinguish *Dairy Mart* factually on the basis that the prior lienholder was paid from its own collateral during the time period between approval of the DIP loan and the payoff of the prepetition secured debt, either directly by cash sweeps or via sweeps by the postpetition lender while the prepetition lien was still in effect.  *Id.* at 135.  They conclude that the *Dairy Mart* holding – that reclaimed goods were effectively disposed by being pledged to obtain the funds to pay off the prepetition lien – is therefore "only" an alternative holding.  That is inaccurate.  Unless the *Dairy Mart* prepetition lender was paid entirely from sales of its collateral and not by the DIP lender, the holding was necessary to the decision.  The decision implies that was not the case.  Indeed, if no reclaimed goods remained on hand, the court's "integrated transaction" analysis would have been superfluous.

[34] Another attempt to distinguish *Dairy Mart* is that the DIP lenders required a lien on all collateral before they would lend, whereas the Dana DIP Lenders did not require a lien on all collateral.  That is false.  As set forth above, the Bankruptcy Court made findings that the DIP Lenders would not lend without the security they were given, including the lien on inventory.  Regardless, the collateral packages did not differ with respect to inventory, which is all that is relevant here.

liens with priority over any other interest in property.

*Phar-Mor* holds that the outcome is purely dependent upon whether the DIP lender took a new lien or was assigned the prior lien. Such elevation of form over substance is unsound and appears to have been result-driven, based on the belated assertion of the Prior Lien Defense in a case where $10 million had already been set aside for payment of reclamation claims. Judge Bodoh justified this conclusion by invoking the maxim that "[n]o action on the part of a debtor should be permitted to defeat a seller's right to reclamation," citing cases holding that a debtor's sale of reclaimed goods after the assertion of a valid reclamation demand does not defeat the claim. *Phar-Mor*, 301 B.R. at 497. Based thereon, without further citation, he concluded that a "debtor's decision to grant a security interest in inventory to a subsequent secured lender cannot defeat a seller's reclamation rights if the seller asserted its rights before the security interest is granted. *Id*. But the cited maxim and its supporting citations relate to something very different. They relate to the legal effect of a debtor's unilateral acts in selling off reclaimed goods. That is different than the legal effect of a debtor seeking court approval of DIP financing secured by a priming lien. There is no logic or authority that supports the extension of that maxim to a debtor's entry into credit agreements that are subject to notice and approval by the Court under section 364 of the Bankruptcy Code. In that context, it is not a debtor's actions that defeat reclamation rights, but the substantive provisions of the Bankruptcy Code.

Moreover, the outcome of *Phar-Mor* is flatly inconsistent with its stated rationale. Under *Phar-Mor*, a debtor would still be permitted to give a subsequent lender a security interest superior to reclamation rights – so long as the transaction is structured as an assignment of the prior lien. No principled distinction exists to justify giving such a lien a different legal effect than that of a DIP lien that is created as part of an integrated transaction that refinances the prepetition debt. In each case the reclaimed goods are used as collateral to obtain the funds to release the prior lien. They are functionally identical.

The Debtors submit that the decision below and *Dairy Mart* are better reasoned than *Phar-Mor*. The Reclaimed Goods were encumbered at all times, and the DIP Lien not only

replaced the prior lien in an integrated transaction, but had priority over the prior lien under section 364. In holding that reclaimed goods are subject to a prior lien, but not to a subsequent lien on the same collateral that secures a loan that pays off the prior lien (except where the new lender takes an assignment of the prior lien), *Phar-Mor* utilizes a mechanical, formalistic approach that disregards both the economic substance and practical equities of refinancing, and that should not find acceptance in this District.

Appellants next argue that even if the Prior Lien Defense and its interpretation in Dairy Mart are still viable, the Bankruptcy Court erred in "extinguishing" their Reclamation Claims, rather than making them "subject to" merely "subordinating" them to the DIP Lien. The argument goes that reclamation claims are not automatically extinguished by the existence of a prior lien, but are only "subject to" the rights of secured creditors, and to the decisions of the secured creditors when it comes to liquidating their collateral. This proposition is the complement of the argument that, since the Prepetition Lenders were oversecured, value must be assigned to the Reclamation Claims. But the Debtors did not argue — and the Bankruptcy Court did not rule— that the Reclamation Claims were extinguished by virtue of the existence of the prior lien. *Dairy Mart* and *Phar-Mor*, among others, hold that the goods are not extinguished but rendered valueless because they were disposed of in satisfaction of the Prepetition Indebtedness.

**D.**    **The Bankruptcy Court Ruled Correctly That The DIP Lenders Had The Rights Of Good Faith Purchasers, And Did Not Abuse Its Discretion In Denying Discovery**

*Phar-Mor* contained one additional justification for its holding, that "having notice of the Reclamation Demands, DIP Lenders cannot qualify as good faith purchasers under § 2-702(C)." *Phar-Mor*, 301 B.R. at 497. Appellants raised the same argument below. As the Bankruptcy Court ruled, however, that is not the prevailing law. Under the Uniform Commercial Code, "good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing.[35] Refusing to permit discovery on the issue, the *Pittsburgh-Canfield* court stated:

---

[35] The definition is codified in § 2-103 or § 1-201 of the Uniform Commercial Code, depending on jurisdiction.

> Although several of the Objecting Vendors argued that they should
> be allowed to take discovery as to the "good faith" of the
> Prepetition Lenders and the lenders under the DIP Facility, they
> did not identify any question as to such "good faith" that would
> warrant such discovery. *See e.g. In re Steinberg's, Inc.*, 226 B.R.
> 8, 11-12 (secured creditor who enforces security agreement "in a
> manner consistent with the clear terms thereof" acts in good faith;
> discovery not proper unless reclaiming seller shows "some basis
> on which to question" the secured creditor's good faith); *In re
> Wathen's Elevators, Inc.*, 32 B.R. 912, 920-21
> (Bankr.W.D.Ky.1983) ("good faith" only requires honesty and
> reasonable commercial standards; secured creditor's alleged
> "knowledge" of reclamation demands is irrelevant to good faith);
> *In re Arlco, Inc.*, 239 B.R. 261, 271-72 (Bankr. S.D.N.Y. 1999).

*Pittsburgh-Canfield*, 309 B.R. at 289-290. Indeed, section 546(c), as amended, does not contain a good faith requirement, which is likely due to the uniform acceptance of this authority with respect to holders of security interests. Finally, as the Bankruptcy Court noted, the Interim DIP Order and Final DIP Order in this case contained explicit findings that the transaction was negotiated and entered at arms-length and in good faith, and those orders are final and unappealable. *Dana*, 367 B.R. at 421. Thus discovery was unnecessary.

To circumvent this, appellants Timken Co., *et al.*, argue that discovery should have been allowed as to the good faith of the *prepetition* lenders. They submit it is relevant to equitable remedies of marshaling and equitable allocation. As set forth above, it is settled law that these remedies are not available to reclaiming creditors. Furthermore, the prepetition lenders perfected their liens long before the reclamation claims came into existence. There is no authority or logical basis upon which a DIP Lender that was conclusively found to have acted in good faith could be found to have lost the protections that accrue with such status, based on actions of the prepetition lenders. Even if it were relevant, any such challenge would have to be made in the context of the Final DIP Order, not in reclamation proceedings. It is inconceivable that the DIP Lender could find itself behind millions of dollars of reclamation claims on the basis of a challenge to its good faith made months or years after the fact and under different criteria than those that it relied upon in extending credit.

E.    **The Bankruptcy Court Did Not Abuse Its Discretion In Declining To Apply Equitable Estoppel**

Appellants argue that equitable estoppel bars the Debtors from asserting the Prior Lien Defense, because they identified their Reclamation Procedures Motion as the "sole and exclusive method for the handling of Reclamation Claims asserted against the Debtors" and never indicated their intention to assert the Prior Lien Defense.

The short answer to this argument, as the Bankruptcy Court found, is that the Reclamation Procedures Motion and Order expressly contemplated the assertion of the Prior Lien Defense. The Debtors specifically referenced that reclamation claims are subject to prior liens at ¶ 12 and ¶ 14(c) of the Reclamation Procedures Motion. The Reclamation Procedures Order states with respect to the Reclamation Report that "[a]fter receipt of all timely reclamation demands and an opportunity to review such demands — *including, without limitation, whether the demand is subordinate to the prior rights of a holder of a security interest in the applicable Goods or the proceeds thereof*," the Debtors would file their Reclamation Report. Reclamation Procedures Order, at ¶ 2(c) (emphasis added).

"Equitable estoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996). There is no fraud here. The Debtors disclosed in the motion and the Court's order stated that reclamation rights are subject to prior liens and that the Debtors would be reviewing whether the demands were subordinate to such prior rights before filing the reclamation report. Given such disclosure, it cannot be said that the Reclamation Claimants were misled into acting upon the belief that the Prior Lien Defense would not be raised, and any reliance would not be justifiable.

On similar facts, the estoppel argument was rejected by the bankruptcy appellate panel in *Pittsburgh-Canfield*. The court noted that in addition to the disclosure in the procedures motion

and order, the lenders had better rights in the reclaimed goods in any event, and thus nothing

about the procedures order reduced the sellers' rights.

> Nothing in the Reclamation Procedures Order substantively
> determined that any reclamation claimant had an allowed claim or
> was entitled to a remedy pursuant to § 546(c). The Reclamation
> Procedures Order specifically noted that the Debtor would assert
> the bank lenders liens' as defenses to the reclamation demands.
> Moreover, nothing in the order implies that this defense would
> only be used if the bank lenders were undersecured. Even upon
> making a valid reclamation claim outside of bankruptcy a vendor is
> not entitled to the return of his goods if there is a superceding
> priority floating inventory lien. In such a case, the secured creditor
> is entitled to be paid from those goods. If a vendor is allowed to
> repossess the goods it is subject to the priority secured creditors'
> lien. In this case, the bank lenders had better rights in the goods
> even at the time the reclamation demand was made. Accordingly
> the Reclamation Procedures Order did not reduce Appellants'
> rights.

309 B.R. at 291.

Appellants reference *Georgetown Steel*, 318 B.R. 340 (Bankr. D.S.C. 2004) , in which

the court found that the debtors should be equitably estopped from revaluing their reclamation

claims. The case is factually distinguishable. There, the debtor's reclamation motion and order

did not disclose the Prior Lien Defense. To the contrary, they (i) provided that all reclamation

claims allowed in the debtor's reclamation report would be deemed administrative expense

claims ("the Reclamation Creditors had been assured that they were entitled to administrative

claims") and (ii) made no reference to a subsequent reclassification or valuation of such

administrative claims. Although a paragraph in the debtors' reclamation *report* purported to

reserve the right to raise priority issues and referenced that reclamation rights were subject to

prior liens, the court found that creditors had relied on the motion and order, not the report.

*Georgetown Steel*, 318 B.R. at 350. "Debtor filed its motion to establish reclamation procedures

early in the case and proposed a specific treatment of the Reclamation Claims. Debtor intended

for such actions to be relied upon. Third, the Reclamation Creditors assert they were not aware

that the granting of an administrative expense claim was conditioned upon valuation. The

Reclamation Creditors relied upon the language in the Reclamation Order, and the Reclamation

Report is inconsistent with the relief set forth in the Order." *Id.*

No such basis for estoppel exists here. The Debtors adequately disclosed the existence of the Prior Lien Defense and their intention to raise it in the Reclamation Report. If not already known to Reclamation Claimants, the law on the issue is extensive and public. The factual information that the Debtors asked Reclamation Claimants to submit was required for the preparation of the Reclamation Report, but it was also disclosed that the Debtors would review whether there were defenses to Reclamation Claims based on the prior liens.

Finally, it is worth noting that the assertion of the Prior Lien Defense and other defenses to Reclamation Claims does not represent an effort by the Debtors to "pull a fast one" on the Reclamation Claimants for their own benefit. The prosecution of objections to Reclamation Claims bears on the relative rights of Reclamation Claimants vis-à-vis general unsecured creditors. On the facts presented, the application of the Prior Lien Defense is not inequitable.

**F.    <u>Berlin Metals Issues</u>**

Berlin Metals argues that the Final DIP Order, by its terms, did not actually grant priority to the DIP Lien over Reclamation Claims. In support of that unlikely contention, it offers what purports to be an excerpt from Paragraph 30 of the Final DIP Order, stating: "nothing in the order shall affect the 'rights' of any 'supplier' of any Debtor, specifically including 'the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense (each a 'Deduction') of any customer or supplier of any Debtor in respect of any account [***]'" (Berlin Metals Opening Brief at 27).

This argument relies on a mischaracterization of the Final DIP Order, achieved by omitting substantive language from the quoted provision. Paragraph 30 of the DIP Order (captioned *Setoff Rights of Third Parties*) actually reads as follows:

> "For the avoidance of doubt, (i) nothing contained in this Final Order or any DIP Loan Document impairs, modifies or otherwise affects the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense (each, a 'Deduction') of any customer or supplier of any Debtor in respect of any

account, account receivable, payment intangible, or any other
payment obligation of that customer or supplier ...."

The missing language makes clear that the ¶ 30 relates to a third party's right to setoff or
assert defenses ("Deductions") against a payment obligation to the Debtors. The right of
reclamation is not a setoff or defense to a supplier's payment obligation. It is an *in rem* remedy
for the recovery of goods sold to the Debtors (relating to payment obligations of the Debtors, not
the suppliers). The language of the order, fully reproduced, offers no support for the argument
that the Final DIP Order subordinates the DIP Lien to Reclamation Claims.[36]

Berlin Metals argues that reclamation rights are interests in property that were entitled to
adequate protection when the DIP Lien was authorized. Its citation to *In re Trans World
Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003) is inapt. That case holds only that the authority under
section 363 to sell property free and clear of interests in property extends to permit sales free and
clear of claims against the debtor. The DIP Lien was authorized under section 364, which
requires only "adequate protection of the interest of the holder of the lien on the property of the
estate on which such senior or equal lien is proposed to be granted." Reclamation creditors do
not hold liens. *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97 (2d Cir. 1999), similarly provides
no supports for Berlin Metal's argument and merely stands only for the unremarkable
proposition that a foreclosure action is an *in rem* proceeding. *Id.* At 102. In short, suppliers
asserting reclamation claims are not secured creditors and do not have property interests

---

[36] Though it does not identify it as an issue on appeal or present argument, Appellant Toyoto Tsusho America, Inc.,
makes the same mischaracterization in its recitation of facts, stating that ¶ 30 of the Final DIP Order provides that
the DIP Lien did not disturb any pre-existing reclamation rights. Brief of Appellant Toyoto Tsusho America, Inc., at
7.

A somewhat related argument is made by two Appellants (Hydro Aluminum Precision Tubing North
America and Emhart Teknologies, Inc.), at page 17 of their identical briefs. The argument, which appears to be
misplaced under the heading of their good faith argument, asserts that ¶ 30 of the Final DIP Order did not give the
DIP Lien priority over Reclamation Claims and that, by ruling that it did, the Bankruptcy Court's Order "works a
substantial hardship of the reclamation Claimants and further violates their due process rights by eliminating
Reclamation Claims they were never afforded an opportunity to defend." As set forth above, their interpretation of
the Final DIP Order is incorrect, and it is unclear how they were deprived of the opportunity to defend their
Reclamation Claims. Certain Reclamation Claimants complained below that they were deprived of notice of the
financing hearings. To the extent relevant, the complaint was unfounded: All actual lienholders and interested
parties received notice of the DIP hearing. Suppliers asserting reclamation rights are not secured creditors, and the
interests of unsecured trade creditors were represented.

requiring adequate protection.

Finally, Berlin Metals argues that the Debtors had no power to convey a security interest to the DIP Lenders. The heading of the argument appears to be a misnomer, as the argument begins with an assertion that the Debtors failed to comply with a requirement that "extraordinary provisions" in DIP financing orders be highlighted, and becomes increasingly difficult to follow.[37] The power to approve a DIP Lien with priority over all other interests in property rests with the Court pursuant to section 364 of the Bankruptcy Code. The balance of the argument appears to be directed to the legal issues concerning BAPCPA and reclamation rights discussed above.

## CONCLUSION

WHEREFORE, Appellee respectfully request that the Court: (a) enter an Order affirming the Bankruptcy Court's Memorandum Decision and Order for the reasons set forth therein and in this Appellee's Opening Brief; and (b) grant such other and further relief as this Court may deem proper.

Dated:    October 29, 2007

PACHULSKI STANG ZIEHL & JONES LLP

By    */s/ Robert J. Feinstein*
Dean A. Ziehl (DZ-6154)
Robert Feinstein (RF-2836)
Debra Grassgreen (CA Bar No. 169978)
Harry Hochman (CA Bar No. 132515)
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212.561.7700
Facsimile: 212.561.7777
Conflicts Counsel for Debtors and Debtors
in Possession, DANA CORPORATION

---

[37] Appellant's Brief on Behalf of Berlin Metals LLC, at 14.